1  Eric H. Gibbs (SBN # 178658)
   ehg@girardgibb.com
2  Dylan Hughes (SBN # 209113)
   dsh@girardgibbs.com
3  Scott Grzenczyk (SBN # 279309)
   smg@girardgibbs.com
4  **GIRARD GIBBS LLP**
  601 California Street, 14th Floor
5  San Francisco, CA 94108
  Telephone: (415) 981-4800
6  Facsimile:  (415) 981-4846

7

E-filing

8  **UNITED STATES DISTRICT COURT**

9  **NORTHERN DISTRICT OF CALIFORNIA**

10

Carolyn Olcott,

Case No. _____ C 12 4673

11
          Plaintiff,

12      v.

**CLASS ACTION
COMPLAINT**

13  Kimpton Hotel & Restaurant Group, LLC;
Hilton Worldwide, Inc.; Intercontinental Hotels

CLASS ACTION

14  Group Resources, Inc.; Marriott International,
Inc.; Starwood Hotels & Resorts Worldwide,

15  Inc.; Trump International Hotels Management,
LLC; Expedia, Inc.; Hotels.com, LP; Sabre

DEMAND FOR JURY TRIAL

16  Holdings Corporation; Travelocity.com, LP;
Priceline.com Incorporated; Booking.com
17  (USA), Inc.; Booking.com B.V.; Orbitz
Worldwide, Inc.; and DOES 1-50;

18
          Defendants.
19

20

21

22

23

24

25

26

27

28

## NATURE OF THE ACTION

1.      Defendants are major hotel chains and the dominant online travel agents ("OTAs") that sell hotel room reservations online.  Plaintiff, a direct purchaser of a hotel room from Defendants, alleges that the Defendants conspired to enter into rate parity agreements – a form of retail price maintenance – to forestall competition in the online hotel room reservation market and restrain the retail price of online room reservations.  The Defendants then vigorously enforced these agreements against competitors that attempted to provide competitive, discount pricing to consumers.  As a result, Plaintiff and other direct purchasers of hotel rooms paid artificially inflated prices and were denied the benefits of a competitive marketplace.

2.      Plaintiff brings this antitrust action on behalf of himself and other purchasers of online room reservations against Defendants for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, the California Cartwright Act, Cal. Bus. & Prof. Code § 16700, *et seq.*, and California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*  Plaintiff seeks damages and equitable relief from Defendants' anticompetitive conduct.

## JURISDICTION AND VENUE

3.      Plaintiff brings this action pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26, to recover treble damages, equitable relief, costs of suit and reasonable attorneys' fees for Defendants' violations of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.  The Court has subject matter jurisdiction pursuant to Section 4(a) of the Clayton Act, 15 U.S.C. § 15(a), and 28 U.S.C. §§ 1331 and 1337.  The Court also has jurisdiction over state law claims brought pursuant to the California Cartwright Act, Cal. Bus. & Prof. Code § 16700 *et seq.*, and the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*

4.      Venue is proper in this federal judicial district under 15 U.S.C. §§ 15 and 22, and 28 U.S.C. § 1391(b) and (c) because, during the Class Period, at least one of the Defendants resided in this district, Defendants transacted business in this district, a substantial part of the events giving rise to Plaintiff's claims occurred in this district, and a substantial portion of the affected interstate trade and commerce described below has been carried out in this district.

2

**INTRADISTRICT ASSIGNMENT**

5.     Assignment to the San Francisco / Oakland division is proper under North District Local Rules 3-2(c) & (d) as a substantial part of the events that are the subject of the litigation occurred in that division.

**PARTIES**

**A.     Plaintiff**

6.     Plaintiff Carolyn Olcott is a resident of Los Osos, California.  In August 2012, Plaintiff purchased a room at the Courtyard by Marriott Vallejo – Napa Valley through Expedia.com.

**B.     Defendants**

Online Travel Agent Defendants:

7.     Defendant Expedia, Inc. ("Expedia") is a Delaware corporation with its principal place of business at 333 108th Avenue NE, Bellevue, Washington, 98004.   In 2011, Expedia generated approximately $3.5 billion in revenue, an estimated 72% of which was derived from hotels.   Expedia owns and operates approximately 140 online travel websites.

8.     Defendant Hotels.com, LP ("Hotels.com") is a Texas limited partnership with its principal place of business at 10440 North Central Expressway, Suite 400, Dallas, Texas, 75231. Hotels.com is an affiliate brand of Expedia.

9.     Defendant Sabre Holdings Corporation ("Sabre") is a Delaware corporation with its principal place of business at 3150 Sabre Drive, Southlake, Texas, 76092.

10.     Defendant Travelocity.com, LP ("Travelocity") is a Delaware limited partnership with its principal place of business at 3150 Sabre Drive, Southlake, Texas, 76092.   Travelocity is owned by Sabre.

11.     Defendant Priceline.com Incorporated ("Priceline") is a Delaware corporation with its principal place of business at 800 Connecticut Avenue, Norwalk, Connecticut, 06854.   In 2011, Priceline generated approximately $4.3 billion in revenue, the substantial majority of which was generated through the marketing and distribution of hotel rooms.   Priceline operates both www.princeline.com and www.booking.com.

3

1       12.     Defendant Booking.com (USA), Inc. is a Delaware corporation with its principal place of

2 business at 100 William Street, Suite 750, New York, New York, 10038.  Booking.com (USA) is a

3 wholly owned subsidiary of Priceline.

4       13.     Defendant Booking.com B.V. is a company based in Amsterdam, the Netherlands, with

5 its principal place of business at Herengracht 597, 1017 CE, Amsterdam, Netherlands.  Booking.com

6 B.V. is a wholly owned subsidiary of Priceline.  Defendants Booking.com (USA) and Booking.com

7 B.V. are herein referred to as "Booking.com."

8       14.     Defendant Orbitz Worldwide, Inc. ("Orbitz") is a Delaware corporation with its principal

9 place of business at 500 W. Madison Street, Suite 1000, Chicago, Illinois, 60661.  In 2011, Orbitz

10 generated approximately $767 million in revenue.

11       15.     Defendants Expedia, Hotels.com, Sabre, Travelocity, Priceline, Booking.com (USA),

12 Booking.com B.V., and Orbitz are collectively referred to as the "OTA Defendants."

13      <u>Hotel Defendants</u>

14       16.     Defendant Hilton Worldwide, Inc., d/b/a Hilton Hotels and Resorts ("Hilton"), is a

15 Delaware corporation with its principal place of business at 7930 Jones Branch Drive, McLean,

16 Virginia, 22102.  Hilton operates hotels under several brand names, including Hilton, DoubleTree, and

17 Embassy Suites.

18       17.     Defendant Intercontinental Hotels Group Resources, Inc. ("IHG") is a Delaware

19 corporation with its principal place of business at 3 Ravinia Drive, Suite 100, Atlanta, Georgia, 30346.

20 IHG operates hotels under several brand names, including InterContinental, Crowne Plaza, and Holiday

21 Inn.

22       18.     Defendant Kimpton Hotel & Restaurant Group, LLC ("Kimpton") is a Delaware limited

23 liability company with its principal place of business at 222 Kearney Street, Suite 200, San Francisco,

24 CA, 94108.

25       19.     Defendant Marriott International, Inc. ("Marriott") is a Delaware corporation with its

26 principal place of business at 10400 Fernwood Road, Bethesda, Maryland, 20817.

27       20.     Defendant Starwood Hotels & Resorts Worldwide, Inc. ("Starwood") is a Maryland

28

4

1   corporation with its principal place of business at One StarPoint, Stamford, Connecticut, 06902.

2   Starwood operates hotels under several brand names, including Le Meridien, Westin, W, and Sheraton.

3        21.      Defendant Trump International Hotels Management, LLC, d/b/a The Trump Hotel

4   Collection ("Trump"), is a Delaware limited liability company with its principal place of business at 725

5   Fifth Avenue, New York, New York, 10022.

6        22.      Defendants Hilton, IHG, Kimpton, Marriott, Starwood, and Trump are collectively

7   referred to as the "Hotel Defendants."

8                          <u>**CO-CONSPIRATORS**</u>

9        23.      Various persons or entities not named as Defendants may have participated as co-

10  conspirators in the wrongful conduct and violations of law alleged herein and performed acts or made

11  statements in furtherance of the conspiracy.

12       24.      Each of the named Defendants acted as the agent or joint venturer of or for the other

13  Defendants with respect to the acts, transactions, violations and common course of conduct alleged

14  herein.

15                             <u>**THE MARKET**</u>

16       25.      The Hotel Defendants are among the largest hotel chains in the United States.  The Hotel

17  Defendants sell room reservations through a variety of channels.  Chief among those channels is the use

18  of online travel agents ("OTAs"), including the OTA Defendants.  OTAs are third-party websites such

19  as expedia.com, hotels.com, travelocity.com, booking.com, priceline.com, and orbitz.com that

20  consumers use to reserve hotel rooms ("Online Room Reservations"), including rooms at the Hotel

21  Defendants' hotels.   Hotels contract with OTAs for the purpose of having the OTAs sell room

22  reservations through their websites.  OTAs display the price of hotel rooms from a variety of hotels at

23  once, allowing consumers to "one stop shop" and compare the rates of different hotels rooms on one

24  website.  Because of this convenience, consumers frequently purchase hotel rooms through OTAs and

25  OTAs have become an essential tool for the Hotel Defendants.

26       26.      A single hotel room is generally available for reservation and purchase through multiple

27  OTAs, and is often available on all of the OTA Defendants' websites.  OTAs make money when a

28                                    5

1  consumer reserves a hotel room through their website, and thus OTAs are competitors in the market for

2  Online Room Reservations in the United States.

3  ### SUBSTANTIVE ALLEGATIONS

4  **A.    The OTA Defendants Have Substantial Market Power In Their Dealings With the**
**Hotel Defendants.**

5

6  27.    The OTA Defendants dominate the online travel market, including the market for Online

7  Room Reservations.   The OTA Defendants represent more than 50% of the online travel business

8  market.  This dominant market position makes access to the OTA Defendants' distribution network an

9  essential part of the Hotel Defendants' business.   Reservations made through the OTA Defendants

10 represent approximately 50% of the Hotel Defendants' room reservations.    The Online Room

11 Reservation market is particularly concentrated because the most popular Online Room Reservation

12 websites are controlled by a small group of OTAs.  For example, Hotels.com is a subsidiary of Expedia

13 and Priceline owns and operates Booking.com.

14 28.    This concentration of market power among the OTA Defendants allows them to assert

15 considerable influence over the Hotel Defendants, whose businesses require access to the OTA

16 Defendants' websites and distribution power.  For example, if Priceline (and, in turn, booking.com)

17 refuse to list Hilton's rooms on its websites, Hilton will be placed at a significant competitive

18 disadvantage.  Consumers will be able to view and reserve Hilton's competitors' hotel rooms, but not

19 Hilton's, on Priceline's websites.

20 **B.    The OTA Defendants and the Hotel Defendants Entered Into Rate Parity**
**Agreements to Prevent Competition in the Price of Online Room Reservations.**

21

22 29.    Although the OTA Defendants have enjoyed a dominant market position, other OTAs

23 willing to provide rooms at discounted rates have posed a significant threat to the overall success of the

24 OTA Defendants.  OTAs willing to accept lower margins or share a portion of their commissions with

25 consumers could provide Online Room Reservations to consumers at lower rates than those offered by

26 the OTA Defendants.  Hotels could also provide rooms directly at reduced rates.  This, in turn, would

27

28

6

1  have required the OTA Defendants to lower their margins or reduce their commissions to match the
2  lower prices offered by discounting OTAs or hotels.

3      30.     In order to prevent this price erosion, and a corresponding decline in profits, the OTA
4  Defendants entered into price maintenance agreements with the Hotel Defendants ("Rate Parity
5  Agreements").   Under these agreements, the Hotel Defendants would not permit any OTA to sell the
6  Hotel Defendants' rooms below a specified price.   For example, if Hilton sold a hotel room to multiple
7  OTAs, each of the OTAs would have to re-sell that hotel room at or above a specified price.   The
8  agreements also prevent the Hotel Defendants from offering hotel rooms at discounted rates on their
9  own websites.   The resulting consistency among the sale prices for Online Room Reservations is
10 referred to as "rate parity" within the industry.

11     31.     In an unrelated litigation involving the OTA Defendants, the District Court for the
12 Western District of Texas concluded that the record in that case clearly demonstrated that the "[OTA]
13 Defendants not only engage in a common course of conduct, but that many of their business practices
14 are virtually identical." *City of San Antonio v. Hotels.com, et al.*, Case No. SA-06-CA-381-OG, (herein
15 "*City of San Antonio*") Memorandum and Opinion on Class Certification, Dkt # 248, at 18 (W.D. Tex
16 May 27, 2008).   The identical practices include "the manner in which they contract with hotels . . . [and]
17 the manner in which they determine the mark ups and fees to arrive at an acceptable margin and
18 retail/sell rate." *Id.* at n.17.   The Court noted that "[a]lmost without exception, the net rate and sell rate
19 for a given room on a given day are the same among the [OTAs] because the Defendants' agreements
20 with hotels all contain 'parity' or 'Most Favored Nation' clauses.   This also makes the [OTA] margins
21 the same." *Id.* at 20 n.21.

22     32.     In a 2007 deposition, Tim Gordon, the Senior Vice President of Priceline, testified that
23 Rate Parity Agreements resulted in hotels and OTAs all offering the same price for Online Room
24 Reservations, with each enjoying the same non-competitive margin. *City of San Antonio*, Dkt. # 188-3,
25 at 4-5.   Mr. Gordon testified that Priceline's contract with Hilton required a specific mark-up that would
26 be the same for all of Priceline's competitors.

27     33.     This mandated, uniform price maintenance has prevented OTAs and hotels from
28

CLASS ACTION COMPLAINT

1  providing Online Room Reservations at discounted rates by, for example, accepting a lower profit

2  margin or lower commission payment.  By fixing and maintaining the retail price of Online Room

3  Reservations, the OTA Defendants have been able to stabilize their profit margins and avoid price

4  competition.

5       34.     The Rate Parity Agreements also further entrenched the dominant market positions of the

6  OTA Defendants and created significant market entry barriers by preventing other OTAs from gaining

7  market share by providing Online Room Reservations at discounted rates.  Blink Booking, a mobile-

8  only reservation service that has been impacted by the Rate Parity Agreements, has stated that:

9          We've long believed that the big online travel agents have been guilty of
   denying consumers the best prices – and that hotels' hands are tied by

10  price parity agreements. The online travel market may appear to offer
   plenty of choice and competition, but the reality is that there are lots of

11  different shop windows selling the same rooms at the same prices – with
   those prices agreed through parity deals between the big groups and the

12  big OTAs. Smaller internet travel agents like Blink have long wanted to

13  offer lower prices to customers by sacrificing some of the margin on the
   prices we buy rooms at from the hotel groups.  However, there is

14  pressure to maintain pricing to protect the interests of a few big travel
   groups, at the expense of the traveller.[1]

15

16       35.     The use of Rate Parity Agreements is a coordinated, industry-wide endeavor.  In 2004

17  numerous Defendants, including Hilton, Kimpton, and Priceline, gathered for a Revenue Management

18  and Pricing in Travel conference hosted by EyeforTravel.  Jimmy Shu, Vice-President at Kimpton, gave

19  a presentation on rate parity.[2]  This annual meeting is now attended by nearly all of the Defendants.[3]

20  IHG has stated that its use of rate parity agreements is "consistent with the long-standing approach of

21

22

23  [1] *Expedia and Booking.com Deny Breaking Competition Rules*, TRAVELWEEKLY.COM, Aug. 1, 2012,
   http://www.travelweekly.co.uk/Articles/2012/08/01/41257/expediaandbooking.comdenybreaking

24  competitionrules.html (last visited Sept. 4, 2012)

25  [2] Hotel-Online.com, Hilton, Kimpton, Sol Melia, Best Western, Hotwire, Priceline, and WorldRes to
   Discuss Revenue Optimization Strategies in Hospitality Sector (May 6, 2004), http://www.hotel-

26  online.com/News/PR2004_2nd/May04_EyeForTravel.html (last visited Sept. 4, 2012)

27  [3] EyeForTravel.com, Travel Distribution Summit North America 2012, http://events.eyefortravel.com
   /travel-distribution-summit-north-america/attendees.php (last visited Sept. 4, 2012)

28

1  the global hotel industry."[4]  Sabre has also admitted that the challenged rate parity practice is "a standard
2  industry practice."[5]

3      36.    By refusing to discount prices, each Defendant is acting contrary to its independent
4  economic interests in a competitive marketplace.   However, by removing competition from the
5  marketplace and agreeing to collectively utilize Rate Parity Agreements throughout the industry, the
6  Defendants were able to secure and promote their collective economic interests by preventing price
7  competition for Online Room Reservations.

8      **C.    The OTA Defendants Have Ensured that the Rate Parity Prevailed Throughout the
9          Online Room Reservation Market.**

10      37.    The OTA Defendants took steps to ensure that the Rate Parity Agreements prevailed
11  throughout the Online Room Reservation market and that competitors were not providing Online Room
12  Reservations at discounted rates.  Under the Rate Parity Agreement price maintenance plan, OTAs were
13  not permitted to offer an Online Room Reservation at a discounted price; i.e. a lower price than the OTA
14  Defendants were offering.  If an OTA engaged in such discount pricing and refused to engage in price
15  maintenance, the Hotel Defendants were to refuse to do business with that OTA and would not allow the
16  OTA to list the Hotel Defendant's rooms on its website.

17      38.    One way that the OTA Defendants ensured compliance with this price maintenance
18  arrangement was by leveraging the Hotel Defendants into enforcing price parity with all OTAs.  If a
19  Hotel Defendant did not enforce the Rate Parity Agreements in this way, the Hotel Defendants could
20  have their rooms removed from the OTA Defendants' websites or placed lower on the OTA Defendants'
21  hotel room search results.  According to Ashwin Kamlani, founder of Hotel Internet Help Inc., "hotels
22  enforce rate parity because they fear the consequences of not maintaining rate parity. . . .  They fear

23
24  [4] Nathalie Thomas, *OFT Alleges Intercontinental Hotels' Online Deals Broke Competition Law*,
    TELEGRAPH, July 31, 2012, http://www.telegraph.co.uk/finance/newsbysector/retailandconsumer/leisure/
25  9441235/OFT-alleges-Intercontinental-Hotels-online-deals-broke-competition-law.html (last visited
    Sept. 4, 2012)
26  [5] Karen Robinson-Jacobs, *Practice That Holds Rates Steady Among Hotels, Travel Sites Coming Under
    Fire*, THE DALLAS MORNING NEWS, Nov. 16, 2010, http://www.dallasnews.com/business/headlines/
27  20101116-Practice-that-holds-rates-steady-among-2650.ece (last visited Sept. 4, 2012)

28                                         9

1  having their hotel dropped to page 6 or even pulled off their largest producing [online travel agents]

2  sites, which translates into a potentially significant loss of revenue."[6]

3      39.    A spokeswoman for Defendant Sabre (owner of Travelocity) confirmed this arrangement,

4  stating that hotels that do not fall in line with the rate parity demands, "will be . . . lower in the search

5  [results] list than hotels that do want to offer" parity.[7]  Expedia has admitted that it refuses to list rooms

6  for hotels that do not provide rate parity for their benefit.  Expedia's CEO and President explained in

7  2009 why it discontinued its relationship with Choice Hotels:

8
        As far as the discussions that we've had with Choice, we are not doing
9          business with Choice right now on a chain basis. We don't have a vast
        majority of Choice hotels on our side.

10          . . .
        First of all, our primary goal is to have the broadest, deepest set and
11          highest quality set of inventory for the benefit of our customers. And this
        doesn't signal any kind of change in our overall philosophy as far as how
12          we work with our hotel partners and what we're looking at. It's not really
        an issue of economics; it's more than issue of our wanting rate parity and
13          inventory parity for our customers.

14          . . .
        When our customers come to Expedia, we want them to know that they're
15          getting the best prices and certainly, we are insistent on that. And to the
        extent that Choice doesn't want to work under those terms. We won't be
16          doing business with each other. Those are the terms that we work with our
17          others strategic partners, they're comfortable where they were comfortable
        with it. So, it's nothing unusual from what I would say is typical practice for
18          us in most of our other OTA competitors so to speak.[8]

19      40.    In a 2010 open letter to Booking.com, Skoosh.com, a competing OTA, described the role

20  that Rate Parity Agreements and the pressure exerted by OTA Defendants place on its ability to discount

21  prices:

22          Earlier this year we started getting some calls from angry and confused
        hoteliers insisting that we were selling their rooms too cheaply. I called
23          them back to work out what was going on and they mostly told me that

24

25  [6] *Id.*
   [7] *Id.*
26  [8] EyeForTravel.com, Expedia Stresses On Rate Parity and Inventory Parity For Its Customers (Oct. 30,
2009), http://www.eyefortravel.com/distribution-strategies/expedia-stresses-rate-parity-and-inventory-
27  parity-its-customers (last visited Sept. 4, 2012)

28                                             10

Booking.com had been on to them threatening all sorts of nonsense if they didn't either remove their hotels from Skoosh or force Skoosh to raise its prices.

I wondered how this was all happening so quickly and then I did a little research and found that Booking.com has an active policy of maintaining the same prices for all companies across the internet. I even found a job ad of yours looking for 'Rate Parity Associates'. It seems like you've got a whole team out there beavering away to 'find any rate inconsistencies between Booking.com and their competitors.' They're doing a good job I have to say. The hoteliers you work with are certainly concerned. One wrote to ask me to close out their hotel on Skoosh: 'just to avoid the penalty that [Booking.com] is threatening us about'.

Some were less friendly. Many of the hoteliers wrote letters to me threatening legal action. One of them had a colleague of yours on one line and me on the other. It seemed that your colleague was insisting that if we hadn't removed their hotel from Skoosh by the end of the phone call Booking.com would cancel the contract with them. They were very scared.[9]

41.     Defendant Trump, in an email to Skoosh, admitted that it enforces anticompetitive Rate Parity Agreements due in part to threats by the OTA Defendants, including Travelocity and Expedia:[10]

**From:** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
**Sent:** 10 May 2010 18:27
**To:** Dorian Harris
**Subject:** RE: New inquiry was submitted on Skoosh.com

The simple answer is; if we do not maintain parity with all, we are threatened with poor placement on sites and worst case... removal of hotel from sales sites. That is the way the OTA's operate in USA. Expedia threatens if Travelocity gets lower rate and vice-versa. It is a vicious cycle if we get out of parity.
I think the model in Europe is built to operate more competitively but that is not the model here. (Much as I wish it was the same as Europe!) I hope this helps you understand why we must be strict with what is offered on all websites.
Thanks,

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
Trump International ▓▓▓▓▓▓▓▓▓▓

42.     Adherence to the Rate Parity Agreements is strictly monitored by the OTA Defendants and employees whose specific purpose is to ensure that other OTAs or hotels are not engaging in price

[9] Dorian Harris, Director of Skoosh.com, Open Letter to Kees Koolen, CEO at Booking.com (Aug. 31, 2010), http://dorian.skoosh.com/open-letter-to-kees-koolen-ceo-at-booking-com/ (last visited Sept. 4, 2012)
[10] Dorian Harris, Director of Skoosh.com, Open Letter to F.T.C. Chairman Jon Leibowitz (Nov. 17, 2010), http://dorian.skoosh.com/open-letter-to-f-t-c-chairman-jon-leibowitz/ (last visited Sept. 4, 2012)

11

1   discounting or competition.[11]  "Online-travel agencies and franchisors today monitor closely a hotel's

2   rates across all channels, and if a preferential rate was given to one over the other that hotel could face

3   dire penalties."[12]  When a rate parity violation is discovered, it can result in the hotel's room receiving a

4   lower listing or being delisted altogether.

5        **D.**    **The Hotel Defendants Have Enforced the Rate Parity Agreements Against OTAs.**

6        43.    As a result of the pressure exerted by the OTA Defendants to enforce those agreements

7   and the economic benefits that rate parity provided to both the OTA Defendants and the Hotel

8   Defendants, the Hotel Defendants stringently enforced the terms of the Rate Parity Agreements against

9   other OTAs.  The Hotel Defendants forbade OTAs from discounting the price of Online Room

10   Reservations in any way that resulted in final retail price falling below that being offered by the OTA

11   Defendants.  If an OTA refused to follow these price parity demands and continued to discount prices,

12   even at its own expense, the OTA was faced with having its business relationship with the Hotel

13   Defendant terminated.

14        44.    Mark Starkov, President and CEO of Hospitality eBusiness Strategies explained a typical

15   hotel rate parity enforcement practice:

16           If you're out of rate parity, the franchisor will fine you $75 to $150.  On
           the second offense they take you off the (central reservations system).

17           They take you off the CRS and send lawyers after you.  After you
           acknowledge you've been wrong, they will reinstate you for $5,000.[13]

18

19        45.    Skoosh has repeatedly described the obstacles faced by OTAs that wish to discount

20   prices.  In a statement made to the BBC, Skoosh stated that:

21           We were openly discounting and hotels would email, call and threaten
           legal action. . . .  Either we'd have to raise prices or take hotels off our

22           list.[14]

23

---

24 [11] Jason Q. Freed, *Does Rate Parity Limit Revenue Managers?*, HOTELNEWSNOW.COM, June 25, 2012,
    http://www.hotelnewsnow.com/Articles.aspx/8459/Does-rate-parity-limit-revenue-managers (last visited

25     Sept. 4, 2012)
    [12] *Id.*

26     [13] *Id.*
    [14] Simon Gompertz, *OFT Launches Investigation Into Online Hotel Room Sales*, BBC NEWS, Sept. 16,

27     2010, http://www.bbc.co.uk/news/business-11330463 (last visited Sept. 4, 2012)

28                             12

46.     In a 2012 letter, Skoosh described the lengths that the Hotel Defendants would go to in order to enforce the Rate Parity Agreements:

> Initially, some of the world's major hotel chains wrote to me directly demanding that Skoosh either raised its rates to the same as the hotels and its other distribution partners (a practice known in the industry as 'rate parity' – see 'Holiday Inn New York' attachment) or remove the hotels entirely from our site.

> Under concerted pressure from the chains, often accompanied by legal threats, we sometimes complied. Where we didn't, the hotel chains went to our wholesale suppliers and pressured them to disconnect their properties from Skoosh. Our main U.S. supplier complied and our $4m account with them dwindled to nothing.[15]

47.     According to Skoosh, its wholesale supplier, AlliedTpro, terminated its relationship with Skoosh because it "cannot risk [its] contracts with Hilton" despite wanting to continue its business relationship with Skoosh.[16] According to documents reviewed by *Telegraph*, Starwood also admitted to requiring its distributors to only do business with OTAs that agree to the minimum rate parity price:

> In one email to a hotel discounter, an executive at Starwood, which runs Le Meridien, Westin, W and Sheraton hotels, said: "Should a wholesaler decide to sell the rooms on a room only basis, he has to make sure that the per contract agreed minimum mark-up is guaranteed."

> The employee said the "violation" of Starwood's Best Rate Guarantee was "really serious" and the breach was reported to the Brussels headquarters.[17]

48.     According to Skoosh, the Rate Parity Agreements and the rigid enforcement of those agreements have "created a Mafia-style atmosphere and an intolerable climate for new business. Skoosh has been directly threatened and, in turn, defended its right to discount hotel prices."[18]

---

[15] Dorian Harris, Director of Skoosh.com, Open Letter to William Baer, Arnold & Porter LLP (Aug. 8, 2012), http://dorian.skoosh.com/open-letter-to-william-baer-arnold-porter-llp/ (last visited Sept. 4, 2012)

[16] Open Letter to F.T.C. Chairman Jon Leibowitz, *supra*, note 10.

[17] Holly Watt and Robert Winnett, *Hotels Face Inquiry in Price-Fixing Scandal*, TELEGRAPH, Apr. 21, 2011, http://www.telegraph.co.uk/finance/newsbysector/retailandconsumer/8467755/Hotels-face-inquiry-in-price-fixing-scandal.html (last visited Sept. 4, 2012)

**E.     The Rate Parity Agreements Forestalled Competition in the Online Room Reservation Market.**

49.     The Rate Parity Agreements have virtually eliminated price competition in the market for Online Room Reservations.  The OTA Defendants and Hotel Defendants understood that they would charge the same price for the same hotel rooms, with none of them choosing to provide discounted rates or otherwise compete on price.  The Hotel Defendants, in accordance with the Rate Parity Agreements and the OTA Defendants' wishes, then prevented other, competing OTAs from providing Online Room Reservations at discounted rates.  Competing OTAs were not allowed to use competitive tools, such as accepting lower profit margins or agreeing to lower commission returns, when it would result in prices that fell below the prices mandated by the Rate Parity Agreements; i.e. the rate offered by the Defendants.

50.     As a result of this deliberate desire to avoid price competition, and deprive consumers of the benefits of such competition, the OTA Defendants offer Online Room Reservations for the same price.  In a deposition Peggy Bianco, Vice President of Global Hotel Services for Orbitz, testified that Orbitz and competitors like Expedia and Travelocity were contractually bound to charge the same price for hotel rooms, and that they do not compete on price.  *City of San Antonio*, Memorandum and Opinion on Class Certification, Dkt # 248, at 19 n.18.  The OTA Defendants also have not competed on price with the Hotel Defendants.  As the below price comparisons indicate, the lack of competition has been widespread, covering hotels across the country (including in the Northern District of California) regardless of location, reservation date, or room type:

51.     San Francisco Marriott Marquis (Marriott)
        2 Double Bed, October 14-15, 2012 (viewed on 9/5/2012)

| | |
|---|---|
| Expedia.com | $389 |
| Hotels.com | $389 |
| Orbitz.com | $389 |
| Priceline.com | $389 |
| Travelocity.com | $389 |
| Booking.com | $389 |

[18] Kevin Bray, *Regulator Accuses Expedia, Booking.com and IHG in Hotel Competition Infringement Probe*, TNOOZ.COM, July 31, 2012, http://www.tnooz.com/2012/07/31/news/regulator-accuses-expedia-booking-com-and-ihg-in-hotel-competition-infringement-probe/ (last visited Sept. 4, 2012)

| Marriott Website | $389 |
|---|---|

52.  Intercontinental Mark Hopkins San Francisco (IHG)
     1 King Bed Standard, October 10-11, 2012 (viewed on 9/5/2012)

| Expedia.com | $279 |
|---|---|
| Hotels.com | $279 |
| Orbitz.com | $279 |
| Priceline.com | $279 |
| Travelocity.com | $279 |
| Booking.com | $279 |
| IHG Website | $279 |

53.  Sheraton Crystal City Hotel, Washington D.C. (Starwood)
     1 King Bed Deluxe, November 14-15, 2012 (viewed on 9/5/2012)

| Expedia.com | $259 |
|---|---|
| Hotels.com | $259 |
| Orbitz.com | $259 |
| Priceline.com | $259 |
| Travelocity.com | $259 |
| Booking.com | $259 |
| Sheraton / Starwood Website | $259 |

54.  Hilton San Diego Bayfront (Hilton)
     2 Queen Bed, November 4-5, 2012 (viewed on 9/5/2012)

| Expedia.com | $339 |
|---|---|
| Hotels.com | $339 |
| Orbitz.com | $339 |
| Priceline.com | $339 |
| Travelocity.com | $339 |
| Booking.com | $339 |
| Hilton Website | $339 |

55.  EPIC Miami, a Kimpton Hotel (Kimpton)
     1 King Bed City View, September 26-27, 2012 (viewed on 9/5/2012)

| Expedia.com | $199 |
|---|---|
| Hotels.com | $199 |
| Orbitz.com | $199 |
| Priceline.com | $199 |
| Travelocity.com | $199 |
| Booking.com | $199 |
| Kimpton Website | $199 |

15

56. Trump International Hotel Las Vegas (Trump)
Studio City View, October 29-30, 2012 (viewed on 9/5/2012)

| | |
|---|---|
| Expedia.com | $169 |
| Hotels.com | $169 |
| Orbitz.com | $169 |
| Priceline.com | $169 |
| Travelocity.com | $169 |
| Booking.com | $169 |
| Trump Website | $169 |

57. This lack of competitive pricing included the Courtyard by Marriott – Napa Valley hotel, where Plaintiff has made an Online Room Reservation:

58. Courtyard Vallejo Napa Valley (Marriott)
1 King Bed with Sofabed, October 8-9, 2012 (viewed on 9/5/2012)

| | |
|---|---|
| Expedia.com | $119 |
| Hotels.com | $119 |
| Orbitz.com | $119 |
| Priceline.com | $119 |
| Travelocity.com | $119 |
| Booking.com | $119 |
| Marriott Website | $119 |

59. This type of uniform pricing in a market in which competitors would otherwise compete on price further demonstrates the conspiracy among the OTA Defendants and the Hotel Defendants. *See William E. Kovacic*, Plus Factors and Agreement in Antitrust Law, 110 Mich. L. Rev. 393, 421-22 (2011). Tellingly, not a single OTA Defendant or Hotel Defendant has attempted to gain market share by providing lower – i.e. competitive -- pricing on the above Online Room Reservations. This is because such price competition would lead to an erosion of sale prices and profits for the OTA Defendants and Hotel Defendants. This scenario, where retail price competition prevails, is what the Defendants' retail price maintenance scheme and Rate Parity Agreements sought to avoid.

60. As described above, the Rate Parity Agreements also prevented other OTAs from providing competitive, discounted pricing to consumers. The only way for OTAs to continue business relationships with the Hotel Defendants was to follow their price parity demands. This price parity across the entire market deprived consumers of the benefits of a competitive market. It also created

CLASS ACTION COMPLAINT

1   significant entry barriers for any OTAs wishing to challenge the OTA Defendants' dominance in the
2   Online Room Reservation market.   OTAs were prevented from using competitive tools, such as
3   accepting lower margins or reduced commissions, to gain an advantage over OTAs that were unwilling
4   to provide room reservations on the same terms.   Deprived of these competitive tools, OTAs, like
5   Skoosh, have faced an insurmountable barrier to challenging the marketplace dominance of the OTA
6   Defendants.

7         61.   The Defendant OTAs have not competed with each other, the Hotel Defendants have not
8   competed with the OTA Defendants, and would-be-competing OTAs have been deprived of their ability
9   to compete with either the OTA Defendants or the Hotel Defendants.   This lack of competition has
10   resulted in consumers paying supracompetitive prices for Online Room Reservations.

11         **F.**   **The Use of Rate Parity Agreements Has Allowed the OTA Defendants to**
12   **"Guarantee" the Lowest Prices on Online Room Reservations.**

13         62.   The use of Rate Parity Agreements, and the Hotel Defendants and OTA Defendants'
14   enforcement of these agreements, permitted the OTA Defendants to offer "Best Price Guarantees."
15   Each OTA Defendant touts its ability to provide the guaranteed lowest price for Online Room
16   Reservations.   However, these "guarantees" are not promises to provide competitive prices.   Rather, they
17   are a recognition that, because of the Rate Parity Agreements, there *is no competition* in the market for
18   Online Room Reservations.   The OTA Defendants are able to tout their ability to provide the best price
19   because there is only one prevailing price in the market.   Each of the OTA Defendants is thus able to
20   provide a "Best Price Guarantee":

21         63.   Booking.com

22   # Best Price Guaranteed

23

24   We promise that when you book with us, you'll get the lowest possible price for your
   room.

25   Guaranteed.

26

27

28                                        17

64.   Expedia:



Best Price Guarantee          Protect Your Trip          Hurricane Promise          No Expedia Fees

We're so confident you'll find the best price for your trip here on Expedia that we guarantee it. Find a cheaper trip within 24 hours of booking and we'll refund the difference and give you a travel coupon worth $50.

65.   Hotels.com:

# Price Match

We're so convinced our prices can't be beat, we'll guarantee it. If you find a lower rate for your hotel on another site just let us know and we'll refund the difference to you, or help you cancel your booking. It's that easy.

66.   Orbitz:

**ORBITZ**

**Orbitz Low Price Guarantee**

Look for our hotel and car rates backed by our Low Price Guarantee. We're so confident they're the lowest online, we're willing to put money on it.

**Hotel Low Price Guarantee Terms and Conditions:**

If you book a qualifying prepaid hotel rate on the Orbitz Web site, and then find the same room, in the same hotel, for the same dates, at a lower price online, before taxes and fees, we'll refund the difference and give you a $50 discount on a future hotel booking.

67.   Priceline:

All published-price hotel bookings are backed by our Best Price Guarantee. Call us if you find a lower price for your hotel reservation, excluding taxes and fees, within 24 hours of booking. If you qualify, we will either help you cancel your reservation so you can rebook at the lower price, or we will refund 100% of the difference. Name Your Own Price Hotels are also backed by our enhanced Big Deal Guarantee.

18

68.     Travelocity:

**TRAVELOCITY PRICE and SERVICE GUARANTEE**

**Terms and conditions:**

WHAT IS THE TRAVELOCITY PRICE AND SERVICE GUARANTEE?
1.   The Travelocity Price and Service Guarantee ("Price and Service Guarantee") is available to travelers who have booked travel on Travelocity.com ("Travelocity") on or after August 25, 2006.
2.   For a prepaid "Good Buy" Hotel (excluding Top Secret Hotels), if you find a Qualifying Lower Rate up until the day before check in, we will provide you with the following per booking:
.     One $50 Promo Code for a future "Good Buy" Hotel (excluding Top Secret Hotels) or Vacation Package (excluding Last Minute Packages) booking on Travelocity and
.     A refund of the difference between the price you paid through Travelocity and the Qualifying Lower Rate up to $500 per booking.

G.     **British Authorities Have Alleged That Defendants Engaged in Anti-Competitive Conduct in the Online Room Reservation Market.**

69.     In September 2010, after receiving a complaint from a competing OTA, the British Office of Fair Trade ("OFT") began a formal investigation into anticompetitive conduct in the online hotel reservation industry.

70.     On July 31, 2012, the OFT alleged that Booking.com, Expedia, and IHG infringed competition law by entering into arrangements that restricted OTAs' ability to discount the prices of online hotel room reservations.   The allegations were based on provisional findings of the OFT's investigation. The OFT considered these alleged violations anti-competitive because they would, among other things, prevent OTAs from competing and gaining market share by providing discounts to customers. According to a British news source, Expedia has admitted that it "engaged in cartel conduct on breach of the law."[19]

71.     After limiting its investigation to a small number of companies, the OFT has announced that it is likely to expand the investigation due to potentially widespread anticompetitive agreements throughout the industry.   Clive Maxwell, OFT Chief Executive, stated that "[w]e want people to benefit fully from being able to shop around online and get a better deal from discounters that are prepared to share their commission with customers."

---

[19] Holly Watt, *Travel Firms Accused of Fixing Hotel Prices*, TELEGRAPH, July 31, 2012, http://www.telegraph.co.uk/finance/newsbysector/retailandconsumer/9441838/Travel-firms-accused-of-fixing-hotel-prices.html (last visited Sept. 4, 2012)

19

72.     As the allegations above and the OFT investigation indicate, Defendants' conduct is preventing consumers from enjoying the benefits of a fair and competitive marketplace.

### CLASS ACTION ALLEGATIONS

73.     Plaintiff brings this action on behalf of herself and as a class action pursuant to Federal Rules of Civil Procedure 23 on behalf of the following Class:

> All persons who directly purchased from an OTA Defendant or Hotel Defendant one or more Online Room Reservations at a hotel owned by a Hotel Defendant. Excluded are Online Room Reservations made as part of a package or without disclosing the name of the hotel prior to completing the reservations.

74.     Excluded from the Class are Defendants; the subsidiaries and affiliates of any Defendant; any person or entity who is a partner, officer, director, or controlling person of any Defendant; members of Defendants' immediate families and their legal representatives, heirs, successors or assigns; and any entity in which any Defendant has or had a controlling interest.

75.     This action has been brought and may properly be maintained on behalf of the Class proposed above under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

76.     **Numerosity.** Members of the Class are so numerous that their individual joinder is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of Class members.  Plaintiff also believes that Class members are sufficiently numerous and geographically dispersed throughout the United States that joinder of all Class members is impracticable.

77.     **Existence and predominance of common questions.**  Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members.  These common questions include:

    a.     Whether Defendants conspired or engaged in concerted action in restraint of trade;

    b.     Whether the alleged combination or conspiracy violated Section 1 of the Sherman Act;

    c.     Whether the acts challenged in this Complaint violated Section 1 of the

1  Sherman Act, the California Cartwright Act, and the California Unfair Competition Law;

2           d.      Whether Defendants' conduct as alleged herein caused Plaintiff and Class
3  members to pay more for Online Room Reservations than they otherwise would have paid in an
4  unrestrained, competitive market; and

5           e.      Whether Plaintiff and other members of the Class were injured by the conduct
6  of defendants and their co-conspirators and, if so, whether Plaintiff and the Class are entitled to
7  declaratory, equitable or injunctive relief.

8       78.    **Typicality.**  Plaintiff's claims are typical of the claims of the Class in that Plaintiff, like
9  other Class members: purchased Online Room Reservations described in the Class definition directly
10  from one of the Defendants; lost money or property and/or was damaged as a result of the same
11  wrongful conduct of the Defendants as alleged herein; and seeks relief common to the Class.

12      79.    **Adequacy.**  Plaintiff is an adequate representative of the Class because her interests do
13  not conflict with the interests of the members of the Class they seek to represent.  Plaintiff has retained
14  counsel competent and experienced in complex class action litigation, and intends to prosecute this
15  action vigorously.  The interests of the members of the Class will be fairly and adequately protected by
16  Plaintiff and her counsel.

17      80.    **Superiority.**  A class action is superior to all other available methods for the fair and
18  efficient adjudication of this controversy because joinder of all members is impracticable.  Furthermore,
19  while the damages suffered by individual Class members may be relatively small, the expense and
20  burden of individual litigation makes it impossible for members of the Class to individually redress the
21  wrongs done to them.

22      81.    Even if the Class members could afford such individualized litigation, the court system
23  could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments
24  and increase the delay and expense to all parties and the court system.  By contrast, the class action
25  device presents far fewer management difficulties, is in fact manageable, and provides the benefits of
26  single adjudication, economies of scale, and comprehensive supervision by a single court.  The benefits

27

28

1  of adjudicating this controversy as a class action far outweigh any difficulties that may occur in
2  managing the Class.

3     82.    In the alternative, the Class may be certified under the provisions of Federal Rules of
4  Civil Procedure 23(b)(1) and/or 23(c)(4) because:

5        a.    The prosecution of separate actions by the individual members of the Class
6  would create a risk of inconsistent or varying adjudications with respect to individual Class members
7  and would establish incompatible standards of conduct for defendants;

8        b.    The prosecution of separate actions by individual Class members would create
9  a risk of adjudications with respect to them that would, as a practical matter, be dispositive  of the
10 interests of other Class members not parties to the adjudications, or substantially impair or impede the
11 ability of other Class members to protect their interests;

12       c.    Defendants have acted or refused to act on grounds generally applicable to the
13 Class, making final injunctive relief or corresponding declaratory relief with respect to the members of
14 the Class as a whole an appropriate form of relief; and

15       d.    The claims of Class members are comprised of common issues that are
16 appropriate for certification under Rule 23(c)(4).

17                    **FIRST CLAIM FOR RELIEF**
                **(Against all Defendants for Violations of Section 1**
18               **of the Sherman Antitrust Act, 15 U.S.C. § 1)**

19    83.    Plaintiff hereby incorporates by reference each preceding paragraph as fully set forth
20 herein.

21    84.    Defendants entered into a continuing contract, combination, or conspiracy to
22 unreasonably restrain trade and commerce in violation of Section 1 of the Sherman Antitrust Act, 15
23 U.S.C. § 1, by artificially reducing or eliminating competition in the relevant market for Online Room
24 Reservations in the United States.

25    85.    Defendants committed acts or made statements in furtherance of formulating and
26 effectuating their contract, combination or conspiracy, including:

27       a.    entering into Rate Parity Agreements with one another;

28                         22

1       b.    agreeing not to compete on the price of Online Room Reservations;

2       c.    conspiring to and enforcing the Rate Parity Agreements against non-conspirators;

3  and

4       d.    requiring each other and other OTAs to maintain the retail price of Online Room

5  Reservations at pre-determined levels.

6      86.    The contract, combination or conspiracy among Defendants consisted of a continuing

7  agreement, understanding, or concerted action among Defendants.

8      87.    The actions of the Defendants constitute a combination in restraint of trade.  Defendants

9  are liable for the creation, maintenance and enforcement of their agreements under applicable "per se,"

10  "quick look" or "rule of reason" standards.   There was no legitimate, pro-competitive business

11  justification for Defendants' combination or conspiracy, or their constituent agreements to restrain

12  competition in the market for Online Room Reservations.

13      88.    Plaintiff was injured in his business or property by the collusion and combination or

14  conspiracy alleged above, which facilitated, enabled, assisted or furthered Defendants' actions to

15  substantially limit competition for the sale of Online Room Reservations.  Plaintiff was forced to pay

16  higher prices for his hotel room reservation than he would have paid in the absence of Defendants'

17  unlawful conduct.  Plaintiff seeks damages and equitable relief under Sections 4 and 16 of the Clayton

18  Act, 15 U.S.C. §§ 15(a) and 26.

19  **SECOND CLAIM FOR RELIEF**

20  **(Against Defendants for Violations of California's Cartwright Act,**
**Cal. Bus. & Prof. Code § 16700 *et seq.*)**

21      89.    Plaintiff hereby incorporates by reference each preceding paragraph as fully set forth

22  herein.

23      90.    Defendants entered into the unlawful conspiracy and combination described above in the

24  State of California and the effects of that conspiracy occurred within and emanated from the State of

25  California.

26      91.    Defendants combined or conspired with each other and co-conspirators to unreasonably

27  restrain trade and commerce by artificially reducing or eliminating competition in California and/or by

28

23

1   raising, fixing, maintaining or stabilizing the prices for Online Room Reservations in California.

2         92.    Defendants' acts and practices, as described herein, amount to vertical price-fixing and

3   unlawful combinations in restraint of trade in per se violation of Cal. Bus. & Prof. Code §§ 16700 *et seq.*

4         93.    Plaintiff and members of the Class were injured in their property by the collusion and

5   combination or conspiracy alleged above, which facilitated, enabled, assisted or furthered Defendants'

6   actions to substantially limit competition in the Online Room Reservation market.  Plaintiff and the

7   other members of the Class have been forced to pay higher prices for Online Room Reservations than

8   they would have paid in the absence of Defendants' unlawful conduct.

9                                       **THIRD CLAIM FOR RELIEF**
            **(Against Defendants for Violations of California's Unfair Competition Law,**

10                               **Cal. Bus. & Prof. Code § 17200 *et seq.*)**

11         94.    Plaintiff hereby incorporates by reference each preceding paragraph as fully set forth

12   herein.

13         95.    Defendants entered into the unlawful conspiracy and combination described above in the

14   State of California and the effects of that conspiracy occurred within and emanated from the State of

15   California.

16         96.    The acts and practices of Defendants, as described herein, constitute unlawful business

17   practices in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.*, in that Defendants combined or

18   conspired with other Defendants and co-conspirators to unreasonably restrain trade and commerce by

19   artificially reducing or eliminating competition in California and/or by raising, fixing, maintaining or

20   stabilizing the prices for Online Room Reservations in California and the United States, in violation of

21   Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, and the California Cartwright Act, Cal. Bus. &

22   Prof. Code §§ 16700 *et seq.*

23         97.    The acts and practices of Defendants, as described herein, also constitute unfair business

24   practices in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.*, because the utility of Defendants'

25   alleged  acts and practices in restricting competition in California and the United States for Online Room

26   Reservations is significantly outweighed by the gravity of the harm that such acts and practices impose

27

28                                24

1  on Plaintiff and Class members.  Defendants' acts and practices also are oppressive, unscrupulous or

2  substantially injurious to Plaintiff and Class members.

3      98.    Plaintiff and Class members have suffered injury in fact and have lost money or property

4  as a result of these Defendants' acts and practices, in that Plaintiff and Class members paid artificially

5  high prices for Online Room Reservations due to Defendants' unlawful agreement, combination or

6  conspiracy and their unlawful, anticompetitive practices.

7      99.    Plaintiff and Class members have suffered harm as a proximate result of the wrongful

8  conduct of Defendants, and Plaintiff therefore seeks appropriate restitution.  Plaintiff and Class members

9  also seek an order, pursuant to Cal. Bus. & Prof. Code § §17200 and 17203, enjoining Defendants from

10 continuing to engage in the unlawful, unfair and fraudulent acts and practices described herein.

11                                **PRAYER FOR RELIEF**

12      WHEREFORE, Plaintiff prays that:

13      A.    The Court determine that his action may be maintained as a class action pursuant to Rule

14 23 of the Federal Rules of Civil Procedure, and enter an order appointing Plaintiff as class representative

15 for the Class and appointing Plaintiff's counsel as Class Counsel;

16      B.    The acts and practices herein alleged be adjudged and decreed to violate Section 1 of the

17 Sherman Act, the California Cartwright Act, Cal. Bus. & Prof. Code §§ 16700 *et seq.,* and the California

18 Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, and that Defendants be enjoined from

19 further violative conduct;

20      C.    Plaintiff and each member of the Class recover damages determined to have been

21 sustained by each of them, plus treble damages and any statutory or liquidated damages;

22      D.    Plaintiff and each member of the Class recover restitution, including disgorgement of

23 profits, determined to be owed to them as permitted by the California Unfair Competition Law, Cal.

24 Bus. & Prof. Code § 17203;

25      E.    Plaintiff and the Class recover their costs of suit, including reasonable attorneys' fees,

26 litigation costs and expert fees as provided by law;

27      F.    Judgment be entered against Defendants and in favor of Plaintiff and the Class; and

28

1  G.  Plaintiff and the Class be granted such other appropriate relief as may be determined to

2  be just, equitable and proper by this Court.

3  **JURY TRIAL DEMANDED**

4  Plaintiff hereby demands a trial by jury on those claims that can be tried to a jury.

5
6  DATED:  September 6, 2012  Respectfully submitted,

7  **GIRARD GIBBS LLP**

8  By: _____

9  Eric H. Gibbs
10  Dylan Hughes
   Scott Grzenczyk
11  601 California Street, 14th Floor
   San Francisco, CA 94108
12  Telephone:  (415) 981-4800
   Facsimile:  (415) 981-4846
13
14  *Counsel for Individual and Representative*
   *Plaintiff Carolyn Olcott*
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CLASS ACTION COMPLAINT